## CONTINENTAL OIL CO. v. LOGAN.

No. 24824. March 31, 1936.

Rehearing Denied June 16, 1936.

Wm. H. Zwick and A. L. Hull, for plaintiff in error.

Floyd Rheam, for defendant in error.

PER CURIAM. This is an action brought by T. G. Logan, trustee, against Continental Oil Company to recover for water in drilling operations sold from the southwest quarter of the northeast quarter of section 17, township 9 north, range 7 east, in Seminole county, Okla., during the months of March, April, May, June, and July, 1929. The plaintiff in his petition alleges that during the months of March, April, May, June, and July, 1929, he was the owner of the above-described real estate and was the owner of all water in all streams and ponds located and situated on said land, and that the defendant during said time used water from said land from the streams and ponds located thereon, which was of the reasonable value of $10 per day.

The defendant filed its answer, which consisted of a general denial, and alleged that during the year 1928, said real estate was owned by one W. J. Monroe, who had impounded waters on said land and sold the same from the premises. That thereafter, by oral agreement, W. J. Monroe leased said premises to one O. M. Boring for the year 1928, and that said O. M. Boring went into possession of the premises under the terms of the lease and remained in possession during the year 1929, with the consent of the plaintiff. That the said O. M. Boring, by reason of the custom theretofore established, sold the water to the defendant, and that the defendant paid the said O. M. Boring for the value thereof. That under the terms of said lease the said O. M. Boring had the right to the use of the surface rights of the premises, including the right to impound and dispose of the surface waters. That the said O. M. Boring went into possession of the premises under provisions of the lease and continued in possession during the year 1929. That he repaired the dam and impounded the water upon the premises, and that the defendant paid for said water.

The plaintiff filed his reply which consisted of a general denial and pleads an estoppel against the defendant for the reason that the defendant had filed a suit on the 25th day of October, 1929, in the district court of Kiowa county, Okla., against O. M. Boring, in which suit the defendant took an entirely inconsistent position with its position in this cause. That it prosecuted said cause to a final determination with full knowledge that the plaintiff, T. G. Logan, trustee, was the owner of the land described in the plaintiff's petition and was the owner of water in the ponds and streams located thereon, and attaches as an exhibit a copy of the journal entry showing final disposition of said cause, together with another exhibit showing the agreement upon which the cause was settled in Kiowa county.

Upon the issues so made the cause was tried. The evidence in the case introduced by the plaintiff disclosed the following facts: W. J. Monroe was the owner of the real estate above described at the beginning of the transactions hereinafter set forth. He testified that he rented the real estate to one Earl Boring, the son of O. M. Boring,

for the year 1928; that there was a creek running through the premises from the north to the south; that O. M. Boring occupied the premises immediately south of the land belonging to the said W. J. Monroe, and that the creek also ran through the land of O. M. Boring. He testified that during his occupancy, sometime prior to 1928, he had constructed a dam across the creek and impounded waters on the real estate and sold waters to various parties conducting drilling operations in the vicinity; that the creek had a well-defined channel and was a running stream. He stated he did not at any time rent the real estate to O. M. Boring, and that he did not rent the real estate to O. M. Boring for the year 1929; that he did not know whether or not the place was cultivated in 1929; that sometime in 1927 or 1928, he had some litigation, and that he came and stayed two nights with O. M. Boring, but that he did not enter into any agreement with O. M. Boring to go into possession of said real estate.

The plaintiff, T. G. Logan, trustee, testified that on or about the 15th day of March, 1928, he entered into a trust agreement with W. J. Monroe which involved the real estate above described, together with other real estate and other property, and introduced said trust agreement. He also testified that a trust deed was given him for said real estate in connection with said trust agreement, and introduced said deed in evidence. The deed shows to have been dated the 4th day of August, 1928, and shows to have been recorded on August 8, 1929. He testifies that the trust agreement was renewed from time to time, and introduced copies of the renewal.

The plaintiff, T. G. Logan, trustee, also testified that at the time the trust deed was executed he did not know who was in possession of the real estate involved in this action; that he had never seen it; that he had never authorized O. M. Boring to sell water off the property and had had no conversation with him.

The defendant demurred to the testimony, which demurrer was overruled, and the defendant excepted. O. M. Boring then testified for the defendant that he lived in Seminole county during the years 1926, 1927, 1928, and 1929; that he lived on section 17, township 9 north, and range 7 east on the property just south of the **40 acres** owned by W. J. Monroe. He testified that the 40 acres owned by W. J. Monroe were traversed by a creek from the north to the south, which also ran over the land of

the witness; that the creek was a running stream of water and with well-defined banks, with shrubbery growing on the banks; that in 1926 W. J. Monroe constructed a dam across the creek and impounded the water from said creek, and that he sold water to the people operating oil wells in the vicinity. He states that during 1928 and 1929, he had charge of the 40 acres involved in this lawsuit. He states that he came into possession of the land as follows: That he had discovered that W. J. Monroe had been sued and service had been made by publication; that he found a man that knew Monroe, and had word sent to Mr. Monroe; that Monroe then came to his home and stayed at his place for a period of approximately two weeks, and that he and Monroe together visited an attorney, with the object in view of getting the judgment set aside, and that the witness advanced Monroe some money for that purpose; that he had an oral agreement with Monroe that he would take possession of the 40 acres during the controversy, and assist him in getting his business adjusted, and for the service he was to receive a deed to the surface rights of the 40 acres; that under said agreement he went into possession of the real estate and farmed it for the years 1928 and 1929; that he repaired the dam which had been washed out and impounded the water from the creek and sold the water to the defendant in this case.

He testified that Monroe failed to carry out his portion of the agreement. He testifies that Monroe was willing to make the deed, but his affairs were in such condition that he could not make the deed at the time and was to make it later; that Monroe had told him to look after the land and care for it; that while he was on the land he heard a rumor to the effect that Monroe had deeded the 40 acres to T. G. Logan as trustee, but he did not ascertain whether the rumor was true; that he was informed that Mr. Logan, as trustee, was expecting a rental for the land; that during the year 1929 he received no demands for rentals from Mr. Logan; that the witness left the farm on the 8th day of September, 1929, and had not been back to the place; that he raised some crops on the land in 1929.

Mr. Logan then further testified, and stated in a former hearing he had testified that either O. M. Boring or his son, at the time he accepted the trust deed, was supposed to be the tenant on the 40 acres, and had possession of the same, but that he did not know whether he was physically present on the land; that it was his under-

standing that Boring was on the land as an agricultural lessee, a farmer tenant. He stated that the date the tenancy should have expired was the 1st day of January, 1929; that the land had not been leased since the 1st day of January, 1929; that he understood it was being farmed during the year 1929; that he had no objection to Mr. Boring remaining on the land and farming it as long as he wished to farm it and pay rentals thereon; that he had not collected any rentals for the year 1929, but he had through others sought to have Mr. Boring pay rent on the premises for the year 1929, with the understanding that by paying such rentals he did not recognize his right to dispose of water from the property at the time he occupied the same; that the negotiations did not terminate in any agreement being reached between them; that he had never talked to O. M. Boring, but that he understood that some man by the name of Boring was on the land and that was all he could say about it.

It was stipulated between the parties that the sales of water was worth $10 per day, and had been used for 146 days. At the close of the testimony, both the plaintiff and defendant moved for a directed verdict. The court sustained the motion of the plaintiff for a directed verdict and the jury rendered a verdict in favor of the plaintiff in the sum of $1,460.

A motion for new trial was filed by the defendant and overruled, and the defendant perfected its appeal.

A number of errors are assigned in the petition in error, among which is that:

"That court erred in sustaining the motion of the defendant in error for a directed verdict and in directing said verdict."

The case has been quite thoroughly briefed upon several propositions of law with reference to the rights of ownership of surface water where impounded from a running stream, and the rights and uses to be enjoyed by riparian owners in reference to waters in a flowing stream, which under our view of the case it is not necessary to discuss, as the case must be settled upon two other propositions involved:

(1) Was the defendant estopped from setting up his defense to the action in view of the suit filed in Kiowa county where it is claimed an inconsistent theory was advanced as opposed to the theory advanced in this case? It is claimed that the plaintiff in error had made an election as to his remedy, and by reason thereof is estopped from seeking the remedy sought in its defense in this case. The defendant in error claims that by reason of the suit being filed in which the plaintiff in error sought in the court in Kiowa county, Okla., to recover from O. M. Boring the money paid him from the sale of water on the theory that O. M. Boring was not the owner of the land at the time of the occupancy of the property, and as such was not entitled to sell the water, estops the plaintiff in error from seeking now as a defense to the action to claim that O. M. Boring was a tenant. (2) The plaintiff in error claims that the evidence disclosed that there was a controverted question of fact as to the character of occupancy of O. M. Boring and claiming that the evidence shows he was a tenant on the farm at the time of the sale of the water and was by reason thereof entitled to make a sale of the water to the plaintiff in error.

1. The court in rendering judgment sustaining the motion of the defendant in error to a directed verdict necessarily had to decide either one or both of these two questions before determining the law question involved as to the ownership of the water at the time of the sale. One was a question of law, the other a question of fact.

Let us examine the first proposition advanced by the defendant in error. Did the plaintiff in error, by filing its suit against O. M. Boring and in pursuing it to its final determination, so act as to estop the plaintiff in error from defending this suit upon what the defendant in error claims to be an inconsistent claim? Did the suit of the plaintiff in error against O. M. Boring in Kiowa county seeking to recover the purchase price of the water paid by it upon the theory that O. M. Boring was not the owner of the land at the time of the purchase of the water, amount to such conduct as would estop the plaintiff in error from defending the suit of T. G. Logan, trustee, to recover the value of the water sold?

We must answer these questions in the negative. The law is not at all well settled in the various states in the union concerning this question. Our state, however, seems to have definitely determined the question in the following authorities:

In the case of Limerick v. Lee, 17 Okla. 165, 87 P. 859, in the third syllabus paragraph, the court states the principle of law as follows:

"A lien statement under oath and a cross-petition filed in one case by a party, is competent evidence against such party on the trial of another case as statements or

admissions, but are not conclusive and carry nothing of estoppel in favor of a stranger to proceedings in which they were filed."

It will be borne in mind in this case that T. G. Logan, trustee, was not a party defendant in the case in Kiowa county, Okla. The court, in the body of the opinion, states the rule as follows (page 173 of 17 Okla., page 862 of 87 P.) :

" 'Admissions or statements though appearing in judicial records estop the person making them from explaining or denying their truth only as against those who were parties or who claim rights under such records, or who acted upon or were influenced by such statements.' Dahlman v. Foster, 55 Wis. 382, 13 N. W. 264."

The court cites the case of Quinby v. Carhart (N. Y.) 30 N. E. 972, as follows:

"The fact that defendants brought a suit, to which plaintiff was not a party, against such third person, claiming that the sale was to him, and seeking to recover the price thereof, and gave evidence tending to show that the sale was directed to him, and not to plaintiff, did not conclude them from afterwards claiming that the sale was to plaintiff, though it may have tended to discredit their testimony that they sold to the plaintiff."

The court also cites in the opinion Murphy v. Hindman, 58 Kan. 184, 48 P. 850, and quotes as follows:

" 'If the record or judicial proceeding contains material declarations or admissions of a party to the same, it may be offered in evidence in behalf of one who was not a party; but it will not be conclusive against the party who made the declarations or admissions.'

" 'A record or judicial proceeding is admissible in evidence in behalf of one not a party to it when it contains a declaration or admission made by the person against whom it is offered. In such circumstances, it does not have the unimpeachable verity of a record. It is not conclusive against the person who made the admission or declaration, but such admission or declaration is of no higher dignity than if made in some other manner, and may be explained or rebutted.' "

And in the same opinion, the court cites the opinion in Solomon R. R. Co. v. Jones, 30 Kan. 601, 2 P. 657, in which Justice Brewer states the principle as follows:

"While an allegation in a verified petition in another case is not estoppel, and does not conclude the party making it, it is competent evidence against him, just as a declaration or admission made by him in any other manner and place."

In the case of Chicago, R. I. & P. R. Co.

v. Mashore, 21 Okla. 275, 96 P. 630, the following syllabus is quoted:

"In the trial of a case brought for work and labor, it developed that plaintiff had brought a prior action, in which he charged another party, as defendant, for the same services, which action was not tried, and no judgment rendered therein. In the case on trial, defendant asked an instruction to the effect that this former action worked an estoppel to plaintiff's prosecution of his case against it, which was denied by the court. Held not error. The bill of particulars in such former suit, being a quasi admission, was competent as evidence, but did not constitute an estoppel."

This opinion was written by Dunn, J. The question is thoroughly settled, it seems to us, in this opinion, in which Mr. Wigmore on Evidence is extensively quoted. The following cases are cited: Rich v. City of Minneapolis, 40 Minn. 82, 41 N. W. 455; Pope v. Allis, 115 U. S. 363, 6 Sup. Ct. 69, 20 L. Ed. 393; Gardner v. Bean, 124 Mass. 347; Hunter v. Hunter or Milam, 111 Cal. 261, 43 P. 756, 31 L. R. A. 411, 52 Am. St. Rep. 180; Thrall v. Thrall, 60 Wis. 503, 19 N. W. 353; Coward v. Clanton, 79 Cal. 23, 21 P. 359; Consolidated Steel & Wire Co. v. Burnham, Hanna, Munger & Co., 8 Okla. 514, 58 P. 654.

T. G. Logan, trustee, not being a party to the suit in Kiowa county, and no action being taken in that court against him or in any manner affecting his rights in the controversy in this cause, we are unable to see how he could be prejudiced by the statements in the petition filed in Kiowa county between the defendant in error and O. M. Boring, or how his rights could be affected by the statements in the pleadings or the action of the court. The statements made in the petition were competent evidence to go to the jury that they might have the benefit thereof in determining the rights between the plaintiff in error and the defendant in error, but to that extent only, and would not work an estoppel in the suit between the defendant in error and plaintiff in error in this cause.

2. Did the court err in directing a verdict for the defendant in error on account of there being a material question of fact which was in conflict in reference to the character of occupancy of O. M. Boring of the 40 acres of land at the time of the sale of the water? We are inclined to believe that the court did commit an error in this regard. In order to determine whether O. M. Boring or T. G. Logan, trustee, was entitled to reap the benefits

from the impounded water on the 40 acres at the time of the sale to the defendant in error, it is necessary that the character of occupancy must be determined from the facts presented in the case, and if the facts are in conflict, then it was a question for the jury to determine under proper instructions from the court.

This brings us to the inquiry, Does the record disclose that there was a controverted question of fact concerning the character of the occupancy of O. M. Boring in 1929 of the premises in question? It occurs to us that there is a very serious controverted question of fact in this regard. The testimony is that O. M. Boring was in possession of the premises in 1929. O. M. Boring testifies that he was in possession of the premises under an agreement by which he was to receive title to the property for services performed; that the agreement was never consummated and the title was never procured from W. J. Monroe.

W. J. Monroe testifies that no such agreement existed. Here is a directly controverted question of fact. If the jury believed that O. M. Boring was in possession of the premises under the arrangement testified to by O. M. Boring, then, under the law of our state, section 10897, Okla. Stats. 1931, he is presumed to be a tenant at will, the statute being as follows:

"Any person in the possession of real property, with the assent of the owner, is presumed to be a tenant at will, unless the contrary is shown, except as herein otherwise provided"

—and this would be a question for the jury to determine under proper instructions given by the court as to just the character of the occupancy of the said O. M. Boring. This question of fact must be determined before the law applicable to the rights of the parties can be applied.

If the premises had been leased for the year 1928, and the tenant held over, under section 10898, Okla. Stats. 1931, the occupant would be a tenant at will, section 10898 being as follows:

"When premises are let for one or more years, and the tenant, with the assent of the landlord, continues to occupy the premises after the expiration of the term, such tenant shall be deemed to be a tenant at will; provided, that no lease or rental contract of premises shall be continued, unless the original contract was in writing, and all other lease contracts shall expire by limitation with the calendar year, without notice."

While the testimony is not clear as to whether or not a lease contract for rental was entered into between O. M. Boring and W. J. Monroe or the son of O. M. Boring and W. J. Monroe, yet there is testimony in the record which discloses that one or the other did have possession of the premises from 1928 under a lease agreement, and we find T. G. Logan, trustee, attempting to collect rents for agricultural purposes from O. M. Boring. Thus, it occurs to us there is a controverted question of fact as to the character of occupancy of O. M. Boring of the premises in question in the year 1929, at the time of the sale of the water of which the defendant in error complains. All of the testimony discloses that O. M. Boring did, in fact, have possession of the premises during the year 1929, until he left the premises in September of that year; that he was in open possession of the same, farming the real property, repairing the dam, impounding and selling water from the premises, with the apparent consent of the owner of the land.

Under this set of facts, the character of his real occupancy was a question of fact to be determined by the jury under the evidence as submitted.

The court has laid down the rule, in fact, there is no departure from it of which we are aware, as set forth in the brief of the plaintiff in error, as follows (Mid-Continent Life Insurance Co. v. Tackett, 149 Okla. 147, 299 P. 862):

"In the trial of a jury case, where the evidence of the plaintiff and defendant was in conflict upon a material question, it was error for the court to give a peremptory instruction to the jury over the objection of the losing party."

For the foregoing reasons, we are convinced that this cause should be reversed and remanded for a new trial, and being of that opinion, it is unnecessary to take up the other questions argued by counsel in their brief. When the cause is again submitted, the questions will undoubtedly be properly taken care of under the law as it is presented at the trial.

For the failure of the court to submit the case to the jury under proper instructions upon the question of the character of the occupancy of the one in possession who sold the water, this cause is reversed and remanded for a new trial.

The Supreme Court acknowledges the aid of Attorneys John W. Hayson, Wallace C. Robertson, and Bruno H. Miller in the

preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hayson and approved by Mr. Robertson and Mr. Miller, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, PHELPS, and CORN, JJ., concur.