BURKE GREIS CO. v. BALLARD et al.

No. 32998.    April 20, 1948.

Rehearing Denied May 25, 1948.

*193 P. 2d 582.*

Busby, Harrell & Trice, of Ada, for plaintiff in error.

Wimbish & Wimbish, of Ada, for defendant in error.

ARNOLD, J.  Action by W. E. Ballard and Flora Ballard against Burke Greis Company, a corporation, for the alleged wrongful death of Norma Jean Ballard.  Verdict and judgment for defendant, and from an order of the trial court granting plaintiffs a new trial, defendant appeals.

On November 12, 1942, Norma Jean Ballard, a 10-year old girl, was instantly killed on North Broadway, the main thoroughfare for northbound traffic out of Ada.  About two blocks from the business center of Ada, the Frisco tracks intersect and cross Broadway and at this point there is no sidewalk adjacent to the highway, but pedestrians in crossing the railroad right of way use a trail or pathway along the extreme east edge of the highway.  Deceased was returning from the business section of Ada where she had gone on an errand for her mother and was proceeding north on foot on this pathway at the east edge of the highway.  When last seen alive she had crossed the main track of the railroad and was proceeding north toward a side track some 40 feet from the main track.  When next seen, according to the testimony, she was lying near a side track of the railroad company, about 40 feet north of the main track, with her feet in the pathway and her head in the street, the position of her body being southeast to northwest.  Her skull was fractured and death was apparently instantaneous.  The testimony of the railroad flagman, who was the last person to see the child alive, was that immediately after seeing and speaking to her he looked south and saw a truck approaching the railroad crossing about 150 feet away, and that it was traveling loaded at a good rate of speed.  This truck belonged to defendant and on this occasion had a pole trailer attached which was loaded with approximately 35,000 pounds of oil well pipe, the truck and its load being about 45 feet long.  No witness testified that any other truck or motor vehicle passed this point on the highway just prior to the child's death.  Neither the driver of defendant's truck nor a helper who was riding with him in the truck saw the child, according to their testimony.  This truck proceeded north on this highway until it was halted by someone about two miles north and the driver was advised that he had killed a child.  The truck was turned around and driven back to the railroad tracks where it was examined by certain witnesses for

any marks which would indicate that it had struck the child. None were found. The child met her death about 5:20 p.m., and ordinarily traffic would have been quite heavy on this highway at that time.

From the facts above summarized, plaintiffs alleged in their petition that the negligence of defendant and its employees in the operation of said truck was the proximate cause of the injury and death of Norma Jean Ballard. Defendant answered by general denial and a plea of contributory negligence, to which plaintiffs replied by general denial. Upon the trial of the case, the jury returned a verdict in favor of defendant, this verdict being signed by ten members of the jury. Trial of the case was on March 12, 1946, and the motion for new trial was acted on and sustained August 7, 1946. When the court indicated that it thought the motion for new trial should be sustained, defendant requested that the court state its reasons for sustaining such motion, which the court did in the following language:

"The court believes that if the evidence of the watchman stating that a party approaching at the time in another car stated that the truck hit the little girl, or something to that effect, and the court believes that if that had gone to the jury the verdict might have been different, but it was excluded; and also, instructions Numbers Six and Eight might have been misleading to the jury and for those reasons a new trial is granted in this case."

Herein the parties to this appeal will be referred to by their trial court designations.

For reversal of the order granting a new trial, defendant relies upon two propositions:

"First, that the trial court erred on an unmixed question of law;

"Second, that the trial court acted arbitrarily and in abuse of discretion in sustaining the motion for new trial."

It is the established rule of this court that on an appeal to review an order of a trial court sustaining a motion for new trial, this court will confine its consideration to a review of the reasons assigned by the trial court for its action. It is also an established rule that the action of a trial court in sustaining a motion for new trial will not ordinarily be disturbed unless it is apparent that the trial court has acted arbitrarily, or has abused its discretion or has erred manifestly in some pure and unmixed question of law. Shreve v. Cornell, 182 Okla. 193, 77 P. 2d 1; Browne et al. v. Bassett, 191 Okla. 22, 126 P. 2d 705.

Following this rule we will consider first the statement of the trial court in effect that the exclusion of certain testimony was erroneous and that if the same had been admitted it might have produced a different result.

From certain language in the briefs, it is to be fairly inferred that in the opening statement of counsel for plaintiff certain testimony intended to be produced was adverted to, and upon objection by defendant that such testimony would be incompetent, irrelevant, and immaterial, the trial court indicated that such was its belief. The opening statements of counsel are not preserved in the case-made and the assumption that such statements were made as based, as stated, upon certain language in the briefs of the parties. The testimony to which the trial court evidently referred in its statement was that of a passing motorist made to the Frisco flagman immediately after the child's fatal injury. However, upon the direct and re-direct examination of the Frisco flagman as a witness for plaintiffs, he was cautioned by counsel for plaintiffs not to state anything which was said to him by this passing motorist, nor was an offer of proof made as to what was said, if anything, by this passing motorist in reference to the child's fatal injury. In view of this situation disclosed by the record of the trial, we adopt the following language from defendant's brief in his argument on this point:

" . . . The trial court erroneously thought he had excluded evidence offered by the plaintiffs when such evidence had not been offered nor any attempt made to offer it. It will be observed from the record that counsel for the plaintiffs was very careful to restrain his witness from making any statement purporting to recount any such evidence. It thus appears that insofar as the motion for new trial was sustained upon the grounds stated such grounds had no existence."

Assuming, without deciding, that the testimony of the flagman would have shown statements by the passing motorist as indicated in the briefs and that such statements would have been competent evidence in the case, that situation is not here presented and we cannot pass upon the correctness or incorrectness of the court's statement with reference to its exclusion being erroneous. So far as is disclosed by the record of the trial this statement of the trial court as a basis for its order granting a new trial was erroneous.

At the conclusion of all of the testimony, defendant submitted to the trial court certain requested instructions in writing. Two of these requested instructions which were given by the trial court and excepted to by plaintiffs, became paragraphs 6 and 8, respectively, of the trial court's instructions to the jury. Paragraphs 6 and 8 read:

"6. You are instructed that it was the duty of the deceased in attempting to cross the highway to exercise ordinary care for her own safety and to use her faculties of sight and hearing in a reasonably prudent manner to observe and avoid the ordinary dangers incident to her walking across the said highway; and in this connection you will consider the situation of deceased, her ability to see and observe an approaching car, the condition of the highway and the nature and amount of traffic thereon and the knowledge of the deceased of these things or the lack of it, and such other facts and circumstances in evidence before you as may determine the care a reasonably prudent person would have exercised for his own safety under the same or similar circumstances."

"8. You are instructed that if you find from all of the facts and circumstances introduced in evidence during the trial of this case that the death of Norma Jean Ballard was the result of an unavoidable accident and that such accident happened without the fault or negligence of either party, then your verdict must be for the defendant."

We have carefully read and considered the testimony of each and every witness examined upon the trial of this case, and we have been unable to find a single word of testimony indicating that the child attempted to cross the highway from the east to the west side and we have been unable to find a single word of testimony showing that such crossing by her was necessary in reaching her home, and we, therefore, reach the conclusion that the court's language in instruction No. 6 assumed the existence of a material fact not in evidence, and that it was, therefore, misleading as a statement to the jury of a fact not in evidence and was an invasion of the province of the jury to determine all facts from the evidence adduced before it.

Paragraphs 6 and 8 of the court's instructions were complementary to each other. Instruction No. 8 could be correctly based only upon the fact assumed by the court in paragraph 6 that the child attempted to cross the street from east to west and thus met her death. In the absence of this assumption of fact there could have been, under the testimony of all the witnesses in the case, no unavoidable accident. The child was last seen alive walking north in the pathway at the east edge of the highway and when she fell her feet were still in this pathway; no motor vehicle other than defendant's truck was seen by any of the witnesses approaching from the south at the time of and near the place of the child's fatal injury; neither the driver of defendant's truck nor his helper sitting in the cab with him saw the child; the track of a truck was observed in the pathway which the

child was following immediately after her death; defendant's truck, according to the testimony of the driver, was a four wheel truck. An unavoidable accident is one which could not have been foreseen or prevented and there is no testimony in the record which reasonably tends to establish that the injury and death of this little girl could not have been foreseen and prevented considering the entire absence of any evidence that the east traffic lane on North Broadway was congested at the time of her injury and death, and no testimony discloses any reason why she could not have been seen and observed by the driver of the truck and his helper on that clear November afternoon.

It has always been the policy of this court to accord to trial courts the exercise of reasonable discretion in granting or refusing new trials. This is for the obvious reason that trial courts have better opportunities from seeing how a case is conducted and hearing and observing witnesses upon the stand to evaluate the testimony than is an appellate court from a reading of the record. The primary importance of this exercise of reasonable discretion by a trial court has been well expressed in the case of W. T. Rawleigh Co. v. Cate et al., 170 Okla. 38, 38 P. 2d 940, where this language is used:

"It is not incumbent upon a trial court to render a judgment in accordance with every verdict of a jury. The trial court performs an essentially solemn function in the furtherance of justice. It must not be forgotten that it is an unyielding and obligatory duty of the trial court to carefully weigh the entire judicial proceedings which have occurred throughout the trial and unless the verdict of the jury meets the responsive and affirmative approval and conscience of the court, it should not stand, and the same should be set aside and a new trial granted."

Based upon the idea expressed in the above-quoted language, this court has uniformly acted with caution in disturbing the action of a trial court in granting a new trial. The rule followed in such circumstances has been well expressed in the syllabus to the case of A. & A. Taxicab Co., Inc., v. McCain, 179 Okla. 492, 66 P. 2d 17, as follows:

"The Supreme Court will not reverse the ruling of the trial court granting a new trial unless it can be seen beyond all reasonable doubt that the trial court has manifestly and materially erred with respect to some pure, simple, and unmixed question of law, and that except for such error the ruling of the trial court would not have been so made. The Supreme Court will very seldom and very reluctantly reverse the decision or order of the trial court which grants a new trial."

After a careful consideration of the entire record on this appeal, we are impelled to the conclusion that the action of the trial court in sustaining the motion for a new trial was not an arbitrary or capricious exercise of discretion, nor did the trial court fall into error upon a pure, simple, and unmixed question of law. The order of the trial court here complained of is sustained.

HURST, C.J., DAVISON, V.C.J., and BAYLESS, WELCH, CORN, and LUTTRELL, JJ., concur.